CLAY, Circuit Judge,
concurring only in the judgment.
Both the majority and the dissent offer wide-ranging opinions that delve into the minute detail of the important issues implicated by this case. It is the breadth of those opinions, however, that prevents me from fully embracing either opinion’s analysis. Therefore, I concur only in the judgment of the majority.
The central concern throughout the appeal of this case has had to do with the location of Rachel Timmerman’s murder, just 227 feet inside the boundaries of the Manistee National Forest in western Michigan. During the penalty phase of his trial, Defendant sought to raise two arguments with respect to the location of the murder. First, he sought to argue that because the murder occurred on federal property in Michigan, a non-death penalty state, the jury should be able to consider as a mitigation factor that had the murder occurred on non-federal property in Michigan, he would not be eligible to receive the death penalty. Second, Defendant contends that he should have been able to make a so-called residual doubt argument that despite the jury’s finding beyond a reasonable doubt at trial that the murder was committed on federal property, it may actually not have been committed on federal property. The issue for us as an appellate court is to decide whether the district court erred in excluding such arguments from the penalty phase.
Any attempts to recast the issue more broadly would seem to be inappropriate *536 and ill-conceived. Specifically, I am sympathetic to the dissent’s suggestion that the majority has altered the standard for what constitutes relevant mitigating evidence. See Dissent at 538. While I do not see the majority’s alteration as the “transform[ation]” that the dissent does, id., I do not think that the majority’s references to the jury’s moral judgment are necessary to resolve this case. See Maj. Op. at 521-23. To be sure, morality and the jury’s “moral response” are part of death penalty deliberations, Penry v. Lynaugh, 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), overruled on other grounds by Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), but, as demonstrated below, I think this case can be more narrowly resolved by deciding whether either of Defendant’s arguments fit into the categories of “culpability and character” that the Supreme Court has identified to be relevantly considered by a jury in imposing the death penalty. See Maj. Op. at 522.
As to Michigan’s status as a non-death penalty state, such an argument seeks to inject extraneous factors into the jury’s consideration of Defendant’s sentence. While the jury, especially in capital cases, is entitled to “take[ ] a wide range of factors into account,” Lockett v. Ohio, 438 U.S. 586, 602, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), jurors must be guided in their “individualized assessment of the appropriateness of the death penalty” to a given defendant, Penry, 492 U.S. at 319, 109 S.Ct. 2934; see also Gregg v. Georgia, 428 U.S. 153, 192-93, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (“The idea that a jury should be given guidance in its decisionmaking is also hardly a novel proposition.”). An argument about Michigan’s decision, as a state, not to impose the death penalty has nothing to do with a federal jury’s determination of the appropriateness of applying the federal death penalty statute with respect to Defendant. The district court’s refusal to allow such an argument during the penalty phase of the trial does not appear to constitute error.
With respect to the residual doubt argument, it must first be stated that the same jury had already found beyond a reasonable doubt that Defendant murdered Tim-merman on federal property when it found Defendant guilty during the guilt phase of the trial. This finding, as demonstrated by the concurrence in Gabrion I, was well-supported by the evidence. United States v. Gabrion, 517 F.3d 839, 857-76 (6th Cir.2008) (Moore, J., concurring in the judgment). This case does not require us to answer the question whether it would have been error had the district court allowed a residual doubt argument on the issue of the location of the murder to be presented during the penalty phase of the trial; and I decline to address that issue. We need only decide whether the district court’s refusal to allow such an argument was error under the circumstances of this case. In this case, the issue of the location of Timmerman’s murder had already been decided definitively and unassailably by the same jury. Notwithstanding the wide berth that the Supreme Court has traditionally given defendants seeking to introduce mitigation evidence during the penalty phase of a death penalty trial, see, e.g., Tennard v. Dretke, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004); Lockett, 438 U.S. 586, 98 S.Ct. 2954, the district court was within its discretion under the facts of this case not to permit re-argument on this point during the penalty-phase, cf. Oregon v. Guzek, 546 U.S. 517, 526, 126 S.Ct. 1226, 163 L.Ed.2d 1112 (2006); Lockhart v. McCree, 476 U.S. 162, 205, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986) (Marshall, J., dissenting).
In sum, Defendant has come forward with no assignments of error, including his *537 arguments with respect to the voir dire, which suggest that the district court’s handling of this case was improper so as to mandate reversal. Therefore, I concur in the judgment that Defendant’s conviction and sentence be affirmed, but not in the majority opinion or its analysis.