IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | |
|---|---|
| THE STATE OF ARIZONA, ) | 2 CA-SA 2008-0011 |
| ) | 2 CA-SA 2008-0021 |
| Petitioner, ) | (Consolidated) |
| ) | DEPARTMENT B |
| v. ) | |
| ) | O P I N I O N |
| HON. RICHARD NICHOLS, Judge of ) | |
| the Superior Court of the State of ) | |
| Arizona, in and for the County of Pima, ) | |
| ) | |
| Respondent, ) | |
| ) | |
| and ) | |
| ) | |
| SCOTT DOUGLAS NORDSTROM, ) | |
| ) | |
| Real Party in Interest. ) | |
| ) | |
| ) | |
| SCOTT DOUGLAS NORDSTROM, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | |
| HON. RICHARD NICHOLS, Judge of ) | |
| the Superior Court of the State of ) | |
| Arizona, in and for the County of Pima, ) | |
| ) | |
| Respondent, ) | |
| ) | |
| and ) | |
| ) | |
| THE STATE OF ARIZONA, ) | |
| ) | |
| Real Party in Interest. ) | |
| ) | |

Pima County Cause No. CR-55947

JURISDICTION ACCEPTED IN 2 CA-SA 2008-0011; RELIEF DENIED
JURISDICTION DECLINED IN 2 CA-SA 2008-0021

---

Law Office of David Alan Darby, Esq.
  By David Alan Darby                                               Tucson

and

Law Office of Richard L. Parrish
  By Richard L. Parrish                                             Tucson
                              Attorneys for Scott Douglas Nordstrom

Barbara LaWall, Pima County Attorney
  By Jacob R. Lines                                                 Tucson
                                   Attorneys for State of Arizona

---

E S P I N O S A, Judge.

¶1        The state of Arizona and Scott Nordstrom, the defendant in the underlying criminal action, filed cross petitions for special action relief challenging the respondent judge's determination of what evidence may be admitted during the aggravation phase of Nordstrom's sentencing. For the following reasons, we accept jurisdiction of the state's petition but deny relief. We decline jurisdiction of Nordstrom's petition.

**Background**

¶2        In 1997, a jury found Nordstrom guilty of six counts of first-degree murder, one count of first-degree attempted murder, and several counts each of burglary and armed

robbery, all committed at the Moon Smoke Shop and Firefighter's Union Hall in Tucson. The jury unanimously found all of the murders had been proven under a felony-murder theory. It also unanimously found that Nordstrom had premeditated two of the murders, one at each location. Following a sentencing hearing, the trial court found the existence of aggravating circumstances under A.R.S. § 13-703(F)(1), (5), and (8) and sentenced Nordstrom to death on all of the murder counts.[1] Our supreme court affirmed Nordstrom's convictions and sentences on appeal. *State v. Nordstrom*, 200 Ariz. 229, ¶ 99, 25 P.3d 717, 747 (2001) (*Nordstrom I*). After the United States Supreme Court issued its decision in *Ring v. Arizona*, 536 U.S. 584 (2002), however, the Arizona Supreme Court vacated the death sentences and remanded the case for resentencing by a jury pursuant to A.R.S. §§ 13-703 and 13-703.01. *State v. Nordstrom*, 206 Ariz. 242, ¶ 28, 77 P.3d 40, 46 (2003) (*Nordstrom II*). Upon remand, the trial court determined that under the Sixth Amendment Nordstrom was entitled to have a jury weigh the aggravating and mitigating circumstances but not entitled to have a jury decide the existence of aggravating circumstances. Nordstrom sought special action review in this court; we determined that the "resentencing must proceed as if

---

[1]Section 13-703(F)(1), (5) and (8), A.R.S., respectively identify the following aggravating circumstances: "The defendant has been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable"; "The defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value"; and "The defendant has been convicted of one or more homicides, as defined in § 13-1101, that were committed during the commission of the offense."

3

Nordstrom had never been sentenced before," and such factors must be proved to the sentencing jury. *Nordstrom v. Cruikshank*, 213 Ariz. 434, ¶ 22, 142 P.3d 1247, 1254 (App. 2006) (*Nordstrom III*).  The case was remanded to the court.

¶3　　　During the guilt phase of trial, Nordstrom had presented alibi evidence for the day of the Moon Smoke Shop robbery and "evidence suggesting" his brother, one of the state's primary witnesses, had actually "perpetrated the crimes and implicated [Nordstrom] to protect himself." *Nordstrom I*, 200 Ariz. 229, ¶¶ 9-10, 25 P.3d at 726.  At the previous sentencing proceeding, Nordstrom argued "residual doubt" as a mitigating circumstance, and upon remand he "indicated his intention to present 'residual doubt' as a mitigating factor" to the new sentencing jury.  The trial court determined, however, that it would be "legally inappropriate to require the State to engage in, and the victims' families to endure, a retrial of the guilt issue" and "precluded [Nordstrom] from presenting evidence of 'residual doubt' in the aggravation/mitigation and sentencing phases of the trial." *See* A.R.S. § 13-703.01(L) (prohibiting a "jury first impaneled for the aggravation phase" from "retry[ing] the issue of the defendant's guilt"); *State v. Harrod*, 218 Ariz. 268, ¶ 46, 183 P.3d 519, 532 (2008) (affirming trial court's preclusion of residual doubt evidence during penalty phase of sentencing).

¶4　　　In his motion for reconsideration before the respondent judge, Nordstrom argued he had a right to present alibi or other "innocence related evidence to rebut the State's" proof of aggravating circumstances and its evidence of the "necessary factual

4

predicates" to satisfy *Tison v. Arizona*, 481 U.S. 137 (1987), and *Enmund v. Florida*, 458 U.S. 782 (1982). Under *Enmund* and *Tison*, a defendant who has been convicted of first-degree murder based on a felony-murder theory may not be sentenced to death unless "the defendant killed the victim, attempted to kill the victim, or intended that lethal force be employed, or was a major participant in the underlying felony and acted with reckless indifference to human life." *Nordstrom III*, 213 Ariz. 434, n.3, 142 P.3d at 1250 n.3 (citation omitted); *see Tison*, 481 U.S. at 158; *Enmund*, 458 U.S at 797. Although "the Sixth Amendment does not require that a jury, rather than a judge, make *Enmund-Tison* findings," *State v. Ring*, 204 Ariz. 534, ¶ 101, 65 P.3d 915, 946 (2003), the state conceded in previous proceedings in this case that a defendant is entitled to have a jury make those findings under Arizona's statutory scheme. *Nordstrom III*, 213 Ariz. 434, ¶ 6, 142 P.3d at 1260; *see* A.R.S. § 13-703.01(P) ("trier of fact shall make all factual determinations required by . . . Constitution of the United States . . . to impose a death sentence"; "[i]f the state bears the burden of proof, the issue shall be determined in the aggravation phase"); *see also State v. Garza*, 216 Ariz. 56, ¶ 46, 163 P.3d 1006, 1017 (2007) ("Arizona law specifically requires the trier of fact to make *Enmund/Tison* findings in the aggravation phase.").

¶5 Nordstrom contended that, "[j]ust as the state plans to introduce guilt phase evidence and testimony to establish death eligibility, fundamental fairness[,] along with the Constitutional right to confront this evidence, . . . legally positions Nordstrom to introduce innocence related evidence/testimony at the *de novo* sentencing trial, specifically alibi

evidence presented" at the guilt-phase trial. He claimed, however, that he was not asking the respondent "to reconsider [the court's] prior ruling regarding defense presentation of residual doubt during the mitigation phase" of the sentencing proceedings. *See Harrod*, 218 Ariz. 268, ¶¶ 37-46, 183 P.3d at 529-32 (residual doubt not mitigating circumstance).

¶6 The state argued in response, as it does in its petition for special action, that residual doubt evidence is irrelevant to any issues before the new sentencing jury, which will be concerned with "how" rather than "whether" Nordstrom committed the crimes. *See Oregon v. Guzek*, 546 U.S. 517, 526 (2006) (sentencing proceedings generally concerned with how defendant committed crime); *Harrod*, 218 Ariz. 268, ¶ 39, 183 P.3d at 530 (same). It reasoned that Nordstrom does not have the right to introduce residual doubt evidence under the Eighth or Fourteenth Amendments of the United States Constitution, *see Guzek*, 546 U.S. at 523, and that such evidence is precluded under § 13-703.01(L), which provides that a jury newly empaneled for the aggravation phase of the sentencing "shall not retry the issue of the defendant's guilt." Therefore, the state contended, although Nordstrom may challenge his *level* of participation in the crimes at issue in the aggravation phase, he may not challenge the *fact* of his participation, that fact having been finally resolved by the guilt-phase jury.

¶7 The respondent judge ruled that Nordstrom "would not be entitled to present alibi evidence or otherwise present residual doubt evidence" if the State were to seek the death penalty only as to the murders the jury agreed had been premeditated, but he ruled that Nordstrom is "entitled to call alibi witnesses as to the felony murder convictions to contest

6

the State's proposed proof that [he] was a major participant in the killings." *See Tison*, 481

U.S. at 158.  In response to a motion to clarify his ruling, the respondent stated:

> The second jury will not decide whether there is a reasonable doubt about guilt due to alibi evidence or any other evidence.  The guilt findings by the first jury were affirmed on appeal.  The first jury's findings create prior convictions which are presumed valid and the Defendant will not be allowed to collaterally attack these convictions before the second jury. . . . The second jury will only decide relevant issues that were not unanimously decided by the first jury.

Agreeing in part with the state's position, the respondent explained that alibi and innocence-

related evidence is "not relevant . . . to the second jury's determination of the F1 and F8

allegations."[2]  But he determined such evidence is relevant to the jury's factual

determinations under *Enmund* and *Tison* and stated:

> It is one thing, to allow the guilty findings to stand for the F1 and F8 issues as this treatment of prior convictions is nothing new.  However, it seems to this Court it is quite a different matter to extrapolate from the guilt findings of the first jury to tell the second how to resolve the *Enmund/Tison* issues.

"In the absence of appellate guidance," the respondent stated, he was "reluctant to rewrite

the statutory scheme," even though the state had "made a powerful argument against

allowing alibi evidence on the four counts involving" felony murder.  These petitions for

special action relief followed.

---

[2]Following remand, the state withdrew its notice of A.R.S. § 13-703(F)(5) as an aggravating factor.

**Jurisdiction**

¶8        We accept special action jurisdiction of the state's petition because the state has no equally plain, speedy, or adequate remedy by appeal. *See* Ariz. R. P. Spec. Actions 1(a). Furthermore, the scope of admissible evidence at a capital sentencing trial before a newly empaneled jury is an issue of statewide importance involving questions of law and statutory construction. And the same or similar issues are likely to recur. *See State ex rel Romley v. Martin*, 203 Ariz. 46, ¶ 4, 49 P.3d 1142, 1143 (App. 2002) ("Special action jurisdiction is appropriate in matters of statewide importance, issues of first impression, cases involving purely legal questions, or issues that are likely to arise again."). Because we decline jurisdiction of Nordstrom's cross-petition, however, we do not address whether the trial court correctly ruled the disputed evidence would not be admissible if the state seeks the death penalty only for the premeditated murders.[3]

**Discussion**

¶9        We review a trial court's rulings on the admission or exclusion of evidence during jury sentencing proceedings for an abuse of discretion. *See Garza*, 216 Ariz. 56, ¶ 56, 163 P.3d at 1018 (reviewing admission of evidence at penalty phase). But we review "[a]ll legal and constitutional questions . . . de novo." *Harrod*, 218 Ariz. 268, ¶ 38, 183 P.3d at

---

[3]Although we need not explain our decision to decline jurisdiction of Nordstrom's petition, we note that the issue presented appears moot at this time. Moreover, if not moot, Nordstrom has an adequate remedy by appeal.

530; *see also State v. Wall*, 212 Ariz. 1, ¶ 12, 126 P.3d 148, 150 (2006) (abuse of discretion includes "[a]n error of law committed in reaching a discretionary conclusion.").

¶10        The state first argues that the respondent judge drew an illogical and "legally untenable" "distinction between residual doubt and alibi evidence." It asserts that alibi evidence "is by its very definition an argument against guilt . . . by placing the defendant in a location other than the scene of the crime at the relevant time," *Black's Law Dictionary* 72 (7th ed. 1999), and its presentation constitutes "an attempt to overrule the jury's verdict[s]."

¶11        The respondent actually stated that he was not distinguishing between alibi and residual doubt evidence "as a practical matter." But his ruling, at least implicitly, recognizes a distinction between alibi or innocence-related evidence offered to rebut the state's proof under *Enmund* and *Tison* and the same evidence offered as either a challenge to the verdicts or as proof of a mitigating circumstance. We believe that distinction both validates the respondent's ruling and distinguishes this case from those on which the state relies.

¶12        As noted above, *Enmund* and *Tison* collectively require a finding that Nordstrom either killed or attempted to kill the victims of the felony murders, intended that lethal force be employed, or, acting with reckless indifference to human life, was a major participant in the underlying felonies. *See Tison*, 481 U.S. at 158; *Enmund*, 458 U.S at 797. The state has the burden of proving one or more of the required facts, and § 13-703.01(P) requires the aggravation-phase jury to make the factual determinations. Rule 19.1(c), Ariz. R. Crim. P., which governs the aggravation-phase proceedings in capital cases, allows a

9

defendant to offer evidence to rebut the state's evidence. And, other than by application of the rules of evidence, the legislature has placed no express limits on what evidence a defendant may present. *See* A.R.S. § 13-703(B) (applying rules of evidence to aggravation phase); *cf. State v. Ellison*, 213 Ariz. 116, ¶ 82, 140 P.3d 899, 919 (2006) (defendant not permitted to "complain that evidence relevant to sentencing was presented at the guilt proceeding" because "nothing prevented [Ellison] from introducing evidence from the guilt proceeding at his sentencing proceeding"); *State v. Anderson*, 210 Ariz. 327, ¶ 85, 111 P.3d 369, 390 (2005) (noting "aggravation and penalty phases" of resentencing included "essentially a full-blown re-presentation of the entire case" and "nothing prevented [defendant] from offering the[] guilt phase testimony" of only two trial witnesses who did not testify at sentencing). In fact, in cases in which the same jury decides both guilt and aggravation, the legislature has expressly provided that "any evidence that was presented at any prior phase of the trial shall be deemed admitted as evidence at any subsequent phase of the trial." A.R.S. § 13-703.01(I).

**¶13**　　The respondent judge, therefore, correctly based his determination on relevancy. "[E]vidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Tucker*, 215 Ariz. 298, ¶ 47, 160 P.3d 177, 192 (2007), *quoting* Ariz. R. Evid. 401. Neither party has provided us with a detailed description of evidence that would be admitted pursuant to the respondent judge's ruling, but evidence

10

that Nordstrom was not present at one of the crime scenes or even that he did not directly participate in the underlying crimes is relevant to a determination of whether Nordstrom had been a major participant. *See Nordstrom I*, 200 Ariz. 229, ¶ 10, 25 P.3d at 726 (describing generally "two types of evidence" presented by the defense: "evidence suggesting that David Nordstrom [defendant's brother] had perpetrated the crimes and implicated his brother to protect himself, and alibi evidence for . . . the day of the Moon Smoke Shop robbery"). As the respondent judge noted, evidence that a person was a major participant in a crime logically includes proof that the person was a participant. Indeed, the state does not directly challenge the relevance of the evidence in question to the *Enmund/Tison* issues the jury must decide. Essentially, it argues instead that the evidence is inadmissible because it is also relevant to a determination of Nordstrom's guilt, the guilt-phase jury obviously rejected the same evidence for that purpose, and § 13-703.01(L) prohibits the aggravation-phase jury from reconsidering the issue of Nordstrom's guilt.

¶14 But evidence inadmissible for one purpose may nonetheless be admissible for another. "The idea that a court may admit evidence for a legitimate purpose even though the evidence is inadmissible for another purpose is not foreign to the law of evidence." *State ex rel. Thomas v. Duncan*, 216 Ariz. 260, ¶ 11, 165 P.3d 238, 242 (App. 2007); *see also* Ariz. R. Evid. 404(b) ("[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

11

knowledge, identity, or absence of mistake or accident."). In *Thomas*, the court denied relief on the state's petition for special action relief challenging the trial court's refusal to preclude evidence of a car chase. 216 Ariz. 260, ¶¶ 2-3, 165 P.3d at 240. The defendant in *Thomas* had been charged with manslaughter after running a red light at a high rate of speed and colliding with another car, killing its occupant. *Id.* He claimed that, when he ran the red light, he was being chased by another vehicle and was in fear of his life because the occupants of that vehicle had threatened him. *Id.* The state argued evidence of the chase was inadmissible because "it went to [a statutorily prohibited] justification defense." *Id.* ¶ 3. Although the defendant maintained he had no intention of raising a justification defense, arguing the evidence was "relevant to the mens rea element of reckless manslaughter," the state contended "that by introducing evidence that is relevant to a justification defense, [the defendant was] raising the defense despite his assertion to the contrary." *Id.* ¶ 9. The court held that, despite the statutory prohibition of a justification defense in that case, "the trial court may admit evidence tending to show justification in prosecutions for the reckless injury or killing of an innocent third person if that evidence is otherwise admissible for a separate purpose." *Id.* ¶ 11.

¶15 We find the reasoning in *Duncan* instructive here. Although the aggravation-phase jury is statutorily prohibited from reconsidering Nordstrom's guilt, the evidence at issue here is relevant to questions the aggravation-phase jury must decide. As in *Duncan*, the evidence "may require a jury instruction indicating the purposes for which the evidence

12

is available and those purposes for which it is not available," *id.* ¶ 11, but the evidence is not barred merely because it is relevant to both a proper and improper purpose.

**¶16** The state relies heavily on the supreme court's decision in *Harrod II*, in which the court stated: "The plain language of provisions J through L of section 13-703.01, as amended in 2002, makes residual doubt evidence irrelevant to capital resentencing proceedings." 218 Ariz. 268, ¶ 44, 183 P.3d at 531. The evidence here, however, is not necessarily residual doubt evidence, and *Harrod* is distinguishable. Harrod was sentenced to death by a judge after a jury found he had committed first-degree murder of a single victim based on both premeditated and felony murder. *Id.* ¶ 8. Like Nordstrom's death sentences, Harrod's sentence was vacated after *Ring* was decided and a new jury was empaneled for aggravation- and penalty-phase proceedings. *Id.* ¶¶ 9-10. Unlike Nordstrom's case, however, because the guilt-phase jury had found the murder was premeditated, the sentencing jury was not required to make *Enmund/Tison* findings at the aggravation phase, and the court did not determine the relevancy of the evidence as to those issues. Rather, Harrod sought to "present the results of a polygraph examination and make statements of innocence during the penalty phase," arguing that, in precluding him from doing so, the trial court had "violated his constitutional right to present all relevant mitigation evidence." *Id.* ¶ 37. He also argued that § 13-703(G) "expressly permits residual doubt evidence *as a mitigating factor at the penalty phase*." *Id.* (emphasis added). In this case, we are concerned not with "residual doubt evidence" admitted as a proposed mitigating circumstance or for attacking the jury's

13

verdict, but admission of alibi evidence for the purpose of rebutting the state's proof of facts the jury is statutorily required to determine at the aggravation phase.

¶17 The state also relies on *State v. Pandeli*, 200 Ariz. 365, ¶ 69, 26 P.3d 1136, 1151 (2001), *judgment vacated by Pandeli v. Arizona*, 536 U.S. 953 (2002), in which our supreme court stated it had not previously "invoked residual doubt as a mitigating circumstance," and *State v. Harrod*, 200 Ariz. 309, n.7, 26 P.3d 492, 500 n.7 (2001) (*Harrod I*), *judgment vacated by Harrod v. Arizona*, 536 U.S. 953 (2002), in which the court voiced concern that "[i]f residual doubt is a mitigating circumstance that the defendant must prove by a preponderance of evidence, the aggravation/mitigation hearing could turn into an attack on the judgement of the conviction" or it could "spawn a retrial on the guilt phase without the constraints imposed by the rules of evidence." Again, in those cases, the court dealt with residual doubt evidence specifically as a mitigating circumstance, not the admissibility of evidence relevant for dual purposes.

¶18 The United States Supreme Court in *Guzek* implicitly determined that whether evidence supports a conclusion "directly inconsistent with the jury's finding of guilt" is material to its admissibility at sentencing.[4] 546 U.S. at 524. But a defendant can be

_____

[4]The Supreme Court disagreed with the Oregon supreme court's determination that consistency with the underlying convictions "did not matter." *Guzek*, 546 U.S. at 524. The Oregon court had relied on the decision in *Green v. Georgia*, 442 U.S. 96 (1974) in which the defendant had "sought to introduce at sentencing a statement his confederate made to a third party that he (the confederate) had alone committed the murder (i.e., without the defendant)." *Guzek*, 546 U.S. at 524. The court in *Guzek* pointed out, however, that its decision in *Green* had been based on the application of the rule against hearsay and "assumed

14

convicted of first-degree murder based on both accomplice liability and felony-murder theories, so evidence that a defendant was not present at a crime scene is not, as a matter of law, directly contrary to or inconsistent with a guilty verdict. *See State v. Rios*, 217 Ariz. 249, ¶ 16, 172 P.3d 844, 848 (App. 2007). Moreover, the supreme court did not elaborate on the effect of inconsistency, and it determined only the "narrow" question: "Do the Eight and Fourteenth Amendments grant [the defendant] a constitutional right to present . . . *new* evidence that shows he was not present at the scene of the crime." *Id*. at 523. It also noted that "the negative impact of a rule restricting defendant's ability to introduce *new* alibi evidence is minimized by the fact that Oregon law gives the defendant the right to present to the sentencing jury *all* the evidence of innocence from the original trial regardless." *Id*. at 526-27.

¶19 We recognize that allowing trial courts to admit alibi evidence in aggravation-phase proceedings creates a risk that the second jury could come to factual conclusions inconsistent with those of the guilt-phase jury based on identical evidence. However, as explained above, we can find no authority requiring the exclusion of the evidence under the circumstances presented here. Moreover, although the aggravation-phase jury could conceivably accept Nordstrom's alibi evidence for the purpose of determining he had not been a major participant in the underlying crimes, such a determination would not operate

---

that, in the absence of the hearsay problem, state law would not have blocked admission of the evidence." *Id*. at 524-25.

as a determination of innocence. As the respondent judge made clear in his ruling, despite the admission of alibi evidence, the aggravation-phase jury will not reconsider Nordstrom's guilt.

**Disposition**

¶20 We cannot say the respondent judge abused his discretion in determining the admissibility of alibi evidence at Nordstrom's resentencing hearing. As noted above, however, we are not privy to any specific items of evidence that will be offered at sentencing. The respondent, of course, retains discretion to rule separately as to each and impose any appropriate limits on their admission. Accordingly, although we accept jurisdiction of the state's special action petition, we deny relief.

_____
PHILIP G. ESPINOSA, Judge

CONCURRING:


_____
GARYE L. VÁSQUEZ, Judge


_____
JOSEPH W. HOWARD, Judge